[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In its second amended complaint, dated October 2, 2000, the plaintiff, in Three Counts, alleges; in Count One, Breach of Contract, in Count Two, non-payment for extra work, and in Count three, delays to contract performance.
On October 16, 2000, the defendant filed its Answer and Special Defenses alleging; in its First Special Defense, failure to provide proper invoices required under the contract, in its Second Special Defense, actions of the plaintiff resulting in delays, in its Third Special Defense, no obligation to pay sub-contractors, in its Fourth Special Defense, lack of certified statement as to items completed, and, in its fifth special defense, failure to pay sub-contractors from proceeds paid by defendant.
On October 18, 2000, the plaintiff filed its Reply denying the defendant's Special Defenses.
The issues having been joined, trial was had to the court.
The parties having been heard, the court, by a preponderance of the credible, relevant, reliable and legally admissible evidence and the reasonable, logical, rational and lawful inferences to be drawn therefrom finds, determines and rules as follows.
On May 21, 1997, the plaintiff, CAS Construction Company, Inc. and the defendant, Town of East Hartford, entered into a written contract for CT Page 5615 work to be known as the Forest Street Reconstruction Project (Project). The project, which was funded by the Connecticut Department of Transportation, consisted of removing the top layer of Forest Street, removing and replacing the existing storm drainage systems and repairing the roadway and curbs.
The court finds that the plaintiff cannot prevail on its Third Count claiming that the defendant caused delays in the plaintiff's ability to perform the contract in a timely manner. To begin with, the plaintiff did substantially complete the project in the 240 days allotted under the contract. Further, the delay in the signing of the contract was caused by the plaintiff's error on its bid. To correct this error required approval by the state which was attained on May 6, 1997. Had the plaintiff not erred in its bid, no such state approval would have been necessary. The error consisted of the plaintiff submitting a bid item where the numerical number did not correspond to the written numbers. The written number, if adopted, would have deducted $47,012.00 from the plaintiff's bid. The plaintiff benefitted from the action of the defendant in that the bid was awarded despite the error and the plaintiff was not held to the lower written number.
Further, in closing down the project for the winter, the defendant acted properly and in accordance with the rules and procedures authorizing a winter closure.
Judgment on the Third Count should enter for the defendant.
The parties have fashioned their briefs in accordance with Exhibit 6 as an index of their respective claims, defenses and argument. The court will follow the format and rules on the claims as so presented.
Initially, the court notes that the contract between the parties is a unit price contract. In a unit price contract the contractor's bid is not determined as a single overall price, but the bid is an accumulation of the costs for each unit item to be installed, the submitted bid being subsequently determined by the number of such units required under the bid specifications and to be installed by the contractor. See MaskelConstruction Company v. Glastonbury, 158 Conn. 592-4 (1969).
Because the work to be performed was to be funded by the State Department of Transportation (DOT) the defendant was required to inspect the work as it progressed and to measure and count exact quantities of work for each line item of the contract, whether it was material, e.g., pipe, fill, sod, etc. installed or used, man hours worked, e.g., police officers, traffic signalmen, etc. or safety items used, e.g. cones, barrels, lights, etc. CT Page 5616
Gilles Bellot, an employee of Barakos Landino, an engineering/consulting firm that the defendant engaged to inspect the work, was the designated inspector assigned to the instant project. Mr. Bellot is a civil engineer with 17 years experience in the field. His duty was to, each day, inspect the work done by the plaintiff, measure quantities, traffic control personal used, and note the measures taken by the plaintiff in utilizing safety items as required under the contract.
The plaintiff was unable to complete road excavation, pipe installation and paving before the start of the winter season.
On November 24, 1997, the defendant notified the plaintiff that it was necessary to suspend work on the project for the winter and that the project was to be re-started no later than April 1, 1998 and that the time between November 24, 1997 and April 1, 1998 would not be charged against the contract time for completion of 240 days.
The court expressly finds that the defendant's actions in closing the project during the winter period was proper and justified. See above where the court ruled on Count Three of the plaintiff's complaint.
As indicated above, the court will rule on the plaintiff's claims with reference to plaintiff's Exhibit 6, which confirms to the pattern adopted by both the plaintiff and the defendant in their Briefs.
The court further notes that the defendant's inspector fully performed his inspection duties in a thorough and workmanlike manner. His reports are meticulous, complete and may confidently be relied upon.
The plaintiff on the other hand, through its principal, Mr. Coons, although requested, did not provide to the Town documentation that was required under the contract by reference to the DOT's regulations concerning a unit price contract. Many of Mr. Coons claims were speculative and subjective on his part. The court requires objective, tangible evidence from which it can conclude the extent of damages, if any. See Bronson Townsend Co. v. Battistoni,, 167 Conn. 321, 326-327.
Items 1, 6, 7 and 8. Gas main obstruction.
The plaintiff's claim that for these items it is owed $13,025.56.
These items became necessary when during the course of excavation the plaintiff encountered a gas main that partially blocked the installation of Reinforced Concrete Pipe (RCP). The problem was solved by the installation of polyvinyl chloride pipe (PVC) which was thinner than RCP CT Page 5617 pipe and would fit under the gas main. Such substitution is an acceptable alternative under the circumstances. However, there was no line item in the contract for PVC pipe. Where there is no line item, according to DOT regulations, particularly form 814A, the contractor is to submit a detailed price proposal to complete the extra work for the Town to review. The Town may accept the price proposal or order the work to be completed on a cost-plus basis. Once a decision has been made as to payment, the work will be authorized by a construction change order.
As to these items, the court expressly finds that the defendant has paid for all the work and its only obligation is to pay for the added cost, if any, of the PVC pipe over the RCP pipe. But, again, the plaintiff did not offer any documented proof but relied on its subjective and speculative opinion as to cost.
The court expressly finds that the plaintiff has failed to prove its claims under items 1, 6, 7 8.
Item 2. Enlarging ports on existing structure.
While excavating an area of Oak Street, the plaintiff encountered an underground structure in the nature of a large catch basin. By agreement of the parties, the structure was incorporated into the drainage system and merely required the enlargement of its entry and discharge ports to utilize the larger pipes required under the project.
The plaintiff has failed to follow its contractual mandates and the DOT's Form 814 resulting in no obligation for the Town to pay.
The plaintiff has shown to the court that it feels, for some reason, it can ignore its obligations under the contract and the incorporative DOT regulations and be paid according to its subjective and speculative estimate of charges. The court expressly finds this lack of conformance to be present in the following claims:
Item 5. Reconnect 3 pipes/private property.
Item 15. Bituminous concrete curb.
Item 17. 24" RCP.
Item 18. Trench excavation.
Item 19. 12" RCP.
Item 20a. Asphalt. CT Page 5618
Therefore, because the plaintiff failed to conform to its contractual obligations and DOT regulations, the defendant cannot pay for these items.
Item 3. Changing and setting catch basin tops.
The plaintiff claims it is owed $2,000.00 for re-installing four type C catch basin tops with type CL tops.
The court expressly finds that the plaintiff was notified of the change after it had installed only one Type C top. Therefore, the plaintiff is entitled to compensation for one catch basin top reinstallation, i.g., $500.00
Item 4. Raising and lowering catch basins.
The parties have stipulated that the plaintiff is due $1,080.68 for this item.
Items 9, 10, 11 12. Traffic safety items.
These items include barrier warning lights, traffic drums, traffic cones and Ecap Lens.
The plaintiff is seeking $26,474.00 for the use and placement of the aforesaid items.
These items are governed by Sections 9.76.01, 9.76.04, 9.78.01, 9.78.04, 9.77.01, 9.77.04, 12.20.01, and 12.20.04 of DOT's regulations.
The regulations clearly state how, when and where the cautionary safety items are to be used. In supporting its claim, the plaintiff again relies on subjective and speculative estimates to support this claim.
The defendant, through its inspector, fully complied with the requirements of the aforesaid regulations. Each day the inspector noted the number of barrels, drums, lights and signs that were required and used. His daily reports included an enumeration of when required lights were not working or were being used for purposes not covered in the plans and specifications of the contract.
The court expressly finds that the plaintiff is due nothing for these items.
Item 13. Adjust Gate Boxes. CT Page 5619
There is no dispute that the gate boxes have been adjusted under the contract requirements and that the plaintiff is owed $3,900.00 for the work. The defendant claims that it cannot pay this amount because the Metropolitan Water District owns the gate boxes and has complained that the plaintiff failed to complete the work, caused damages or failed to meet MDC standards. The project has been completed and the road has been used for the past three years. The court holds that this item should be paid.
Item 14. Adjust sanitary manholes.
The parties agree that 18 manholes were adjusted and the value of the work is $4,750.00. Again, the work was done, the project was completed and the road has been in use for three years. The court finds that for this item the defendant is owed $4,750.00 and should be paid.
Item 16. Sweeping by hand.
For this item, sweeping by hand, the plaintiff is seeking $6,144.00. DOT regulations do not allow payment for hand sweeping. The defendant's inspector kept precise measurements of the time and the plaintiff performed this function as required under the contract and was fully paid. The defendant owes the plaintiff nothing for this item.
Items 20, 21 21a. Traffic control officers.
The plaintiff claims that it has not been paid for the services of traffic control officers, both civilian and police officers. The defendant asserts that such services were fully paid for at the contract rate and for time on the job. The plaintiff claims that the traffic officers should have been paid starting at the time they arrived on the project. The defendant's inspector limited the payment to that time from the actual start of the work day to its end as set forth in the contract. The court finds that the plaintiff was fully paid for this item. The defendant has no obligation in a unit price contract to pay for any services outside the parameters of the working hours as set forth in the contract.
Item 22. Extra CNG service connections.
The plaintiff claims it is owed $7,410.00 for extra work required to dig around and carefully expose service connection found were excavations occurred. The court concurs with the defendant and finds that the onus was on the plaintiff to anticipate and allow for the presence of underground utilities in fashioning its bid. The plaintiff was instructed CT Page 5620 that as far as the utility connections were concerned, their location in the maps and specifications were: "1 . . . approximate in nature. 2. The contractor shall determine for himself, prior to bidding, the size, locations, elevations, and existence of all such utilities and features that may affect his construction operations." The court holds that the Town owes nothing on this claim.
Item 23. Sod.
This item was paid for at the unit contract price as measured by the defendant's inspector. The plaintiff provided no credible evidence contradicting the Town's measurements or to where the additional sod was utilized. The defendant owes nothing on this item.
Item 24. Reconnection of pipes to new catch basins.
The plaintiff claims that it is owed $37,100.00 to reconnect existing pipes to new catch basins. It is difficult for the court to conceive of a claim with less merit. Nothing should be more apparent than when it becomes necessary to disconnect existing pipes to replace a catch basin, the existing pipes would have to be reconnected to the new catch basins. The court expressly finds that this item was an integral and essential element of the contract and that the plaintiff is owed no further payments for same.
Item 25. Waterline service connections.
The parties have stipulated that the plaintiff is owed $3,427.60 for this item.
Item 26. Second remobilization.
The plaintiff is seeking $20,000.00 for remobilization of resources after a winter shut down. The contract between the parties calls for an initial mobilization charge of $20,000.00.
The court has found that the defendant acted reasonably, lawfully and in accordance with the rules and procedures authorizing a winter closure. The defendant failed to conform to CT DOT Form 814A Sec. 1.08.06 and did not submit" . . . to the Engineer, in writing, a request for a contract adjustment within 7 calendar days of receipt of a notice to resume work." This amount is not due.
Item 27. Delays due to design problems.
The plaintiff is claiming $26,250.00 for delays caused by design CT Page 5621 problems. But the plaintiff has offered no credible evidence as to specific design problems and the specific damages caused thereby. The project was completed within the 240 days required in the contract. This claim fails.
Item 28, 29. Topsoil and turf establishment.
The plaintiff claims that the Town owes $1,631.00 for topsoil that was needed in an area near Oak Street and is owed $2,260 for seeding. The plaintiff has provided no documentation or detail and relies on his subjective and speculative opinion as to these items. The Town cannot pay these claims.
Item 30. Excessive use of electricity.
Excessive use of electricity is claimed as an item owed to the plaintiff. Nothing in the contract supports this charge, nor was any tangible evidence offered as proof supported this claim. The Town is not liable.
Coppola's charges. Claim for extra work by sub-contractor.
The Town is not liable for any claim of extra work by Coppola. Its work was performed as a sub-contractor of the plaintiff. Again, no written claims have been submitted by Coppola. as required under the contract, to support the payment for extras beyond and above the contract price. The Town is not liable for this item.
In summation, the court finds that the plaintiff is owed, under Count One of its Complaint; for adjustment of gate boxes, $3,900.00, for resetting manholes, $4,750.00, for retainage, $20,072.00, for a total of $28,722.00.
Further, the court finds that the plaintiff is owed, under Count Two of its Complaint: for changing and resetting catch basin tops, $500.00; for raising and lowering catch basins, $1,080.68; and for waterline service connections, $3,427.60; for a total of $5,008.28.
Accordingly, a judgment is entered on Count One of the Complaint for the plaintiff to recover of the defendant the sum of $28,727.00.
Judgment is entered on Count Two of the Complaint for the plaintiff to recover of the defendant the sum of $5,008.28.
Judgment is entered for the defendant on Count Three of the Complaint. CT Page 5622
The court makes no award of costs and allows the plaintiff legal interest from the date of judgment.
____________________ DANIEL F. SPALLONE JUDGE TRIAL REFEREE